Vernon E. Leverty, Esq., NV Bar No. 1266
Patrick R. Leverty, Esq., NV Bar No. 8840
William R. Ginn, Esq., NV Bar No. 6989
Jess P. Rinehart, Esq., NV Bar No. 11697
LEVERTY & ASSOCIATES LAW CHTD.
832 Willow Street
Reno, NV 89502
Telephone: (775) 322-6636
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| The Estate of Egon Klementi by and through the Special Administrator Elfriede Klementi and Elfriede Klementi, individually<br><br>Plaintiffs,<br>v.<br><br>HARTFORD UNDERWRITERS INSURANCE COMPANY, a Connecticut Corporation; JEFFREY SPENCER DOES I-XXX; and ABC CORPORATIONS A-Z; inclusive,<br><br>Defendants. | Case No. 3:18-00169-MMD-WGC<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs, the Estate of Egon Klementi by and through the special administrator, Elfriede Klementia and Elfriede Klementi, an individual, through their attorneys, Leverty & Associates Law Chtd., and Glogovac & Pintar allege and aver against the above-named Defendants :

## I. JURISDICTION AND VENUE

1. At all times relevant, Egon Klementi ("Klementi Estate") and Elfriede Klementi ("Elfriede") were residents of Douglas County, State of Nevada. Plaintiffs are collectively referred to as the Klementis.

2. Defendant, Hartford Underwriters Insurance Company ("Hartford"), is an insurance company authorized to conduct the business of insurance in the State of Nevada. Hartford is and was, subject to regulation under Title 57 of the Nevada Revised Statutes.

3. Defendant Jeffrey Spencer is an individual that resides in Douglas County, Nevada and is a citizen of the State of Nevada.

1

4.  Egon Klementi passed away on October 25, 2017. On March 9, 2018, the Court entered an Order appointing Elfriede Klementi as the Special Administrator of the Estate of Egon A. Klementi. Elfriede Klementi signed the letters of special administration and took the oath on April 11, 2018.

5.  Plaintiff does not know the true names or capacities of the defendants sued as DOES I through XXX; therefore, Plaintiff sues said defendants by such fictitious names, and prays leave that when the true names of the defendants are ascertained, they may be inserted with allegations. Plaintiff is informed and believes, and upon such information and belief, alleges that each defendant designated by such fictitious names is responsible in some manner for the events and happenings referred to and that such conduct of defendants caused injury and damages proximately to Plaintiff. Upon learning the true names and identities of DOES I through XXX, Plaintiff will seek leave of court to amend this Complaint.

6.  Plaintiff does not know the true names or capacities of the defendants sued as ABC CORPORATIONS A-Z; therefore, Plaintiff sues said defendants by such fictitious names, and prays leave that when the true names of the defendants are ascertained, they may be inserted with allegations. Plaintiff is informed and believes, and upon such information and belief, alleges that each defendant designated by such fictitious names is responsible in some manner for the events and happenings referred to and that such conduct of defendants caused injury and damages proximately to Plaintiff. Upon learning the true names and identities of ABC CORPORATIONS A-Z, Plaintiff will seek leave of court to amend this Complaint.

7.  Defendants were the agents and employees of each of the remaining defendants and/or acting in concert with one another, and were acting within the course and scope of the agency and employment, and each defendant has ratified and approved the acts of the other. Therefore, each defendant is liable for the acts of each remaining defendant.

8.  The parties have caused these events to occur in Washoe and Douglas County, Nevada from which these claims arise.

## II. GENERAL ALLEGATIONS

9.  Plaintiffs incorporate by this reference and realleges each and every allegation in all

paragraphs on this complaint inclusive, as if fully set forth herein.

10.     Upon information and belief, the Klementis, purchased homeowners insurance from Hartford. Hartford provided homeowners insurance coverage to the Klementis under policy 55RBB300594 dating 03/26/12 through 03/26/13, 03/26/13 through 3/26/14 and 03/26/14 through 03/26/15 with limits of $300,000.

11.     Upon information and belief, the Klementis purchased personal umbrella liability insurance under l322184 dating 02/21/12 through 02/21/13, 02/21/13 through 02/21/14 and 02/21/14 through 02/21/15 with limits of one million dollars.

12.     Upon information and belief, because of events that occurred in December of 2012, Jeffrey Spencer, as Third Party Plaintiff, brought a Third Party Complaint against Egon Klementi, as an individual and Elfriede Klementi as an individual, in Case No. 14-CV-0260 filed in the Ninth Judicial District Court of the State of Nevada In and For the County of Douglas referenced in this pleading as the "Spencer lawsuit."

13.     Upon information and belief, Jeffrey Spencer, as Third Party Plaintiff, filed in a First Amended Third-Party Complaint against Egon Klementi, as an individual and Elfriede Klementi as an individual, in Case No. 14-CV-0260 filed in the Ninth Judicial District Court of the State of Nevada In and For the County of Douglas.

14.     Upon being served with the Third Party Complaint in December of 2014, the Klementis provided the Spencer lawsuit to Hartford requesting that it provide them a defense to the lawsuit.

15.     Hartford, through its duly authorized representative, Mr. Alonso Smith, responded to the request for a defense by letter of March 20, 2015. This letter advised the Klementis that Hartford completed its coverage review and did not find there to be any coverage for the lawsuit and therefore Hartford would not defend or indemnity them .

16.     Hartford failed to find or analyze whether coverage providing defense and indemnity existed under any other insurance policy issued by Hartford to Klementi including but not limited to the personal umbrella liability coverage it issued to the Klementis.

17.     Due to Hartford's improper denial and refusal to provide a defense to the Klementis, they

1  were forced to retain, at their own cost, the legal services of the law firm of Glogovac & Pintar to
2  defend the Spencer lawsuit.
3  18.     Michael Pintar Esq. wrote Hartford on or about May 5, 2016 advising that he represented
4  the Klementis and that he found it "perplexingly, the Hartford denied coverage to the Klementis
5  while at the same time extending coverage to Egon's brother, Helmut Klementi, and that the
6  Hartford had retained the Lemons, Grundy firm to represent him, based on the same allegations."
7  Mr. Pintar further wrote: "In any event, attached for your review is a copy of the amended complaint
8  that was filed.  Based upon the amended complaint, I would respectfully request that the Hartford
9  reconsider its position and defend and indemnity Mr. And Mrs. Klementi in the Third-Party Action."
10 19.     On or about May 12, 2016, Mr. Alonso K. Smith wrote Mr. Pintar an email acknowledging
11 receipt of the amended lawsuit he sent with his May 5, 2016 letter.  Mr. Smith wrote that he would
12 review the documents and get back to him.
13 20.     On or about July 26, 2016, Mr. Alonso Smith emailed to Mr. Pintar that Hartford had
14 reviewed the third Amended Cross Complaint, dated June 12, 2016. Mr. Smith wrote: "Hartford
15 finds that the allegations of damages contained within the 3rd Amended Cross-Complaint do not alter
16 Hartford's coverage position taken in its March 20, 2015 coverage declination."
17 21.   On or about August 1, 2016, Mr. Pintar emailed to Mr. Alonso Smith enclosing a copy of Jeff
18 Spencer's deposition transcript. Mr. Pintar advised Hartford in the email: "As you are no doubt
19 aware, the duty to defend is broader than the duty to indemnity.  An insurance has no duty to defend
20 only when 'there is no potential for coverage' *United Nat'l Ins. Co. v. Frontier Ins Co*, 99 P.3rd 1153
21 (2004)."
22 22.    On or about October 4, 2016, Mr. Alfonso Smith responded to Mr. Pintar's email and advised
23 that after careful review, Hartford found no duty to defend.
24 23.     On or about April 11, 2017, Mr. Pintar wrote Mr. Alfonso Smith concerning whether
25 Hartford had considered the personal umbrella liability insurance coverage the Klementi's had
26 purchased from Hartford and advised Hartford that a defense was owed to his client's by and because
27 of the Hartford umbrella policy.  Hartford never responded to Mr. Pintar's April 11, 2017 letter nor
28
                                            4

did it provide a defense.

24. Hartford had a duty to investigate, evaluate and look for all possible coverages to provide the Klementi's with coverage including a defense.

25. Hartford failed to conduct a reasonable investigation into the many requests made by Klementi's for a defense and indemnification in the "Spencer lawsuit."

26. On or about May 25, 2017, a letter was sent to Mr. Alonso Smith advising that the law firm of Leverty & Associates has been asked to evaluate whether Hartford had failed to defend the Klementis under the Hartford umbrella policy.

27. The law firm of Leverty & Associates argued in the May 25, 2017 that defense coverage existed under Hartford's umbrella coverage. In addition, Hartford was reminded that it operates in the State of Nevada and is duty bound to comply with the Nevada Insurance Trade Practices Act and regulations specifically NAC 686A.665 (3) and NAC 686A.675(3). Hartford was advised that in not responding to Mr. Pintar's April 11, 2017 letter, it had violated NAC 686A.665 (3).

28. The letter of May 25, 2017 advised Hartford that the duty to defend is broader than its duty to indemnity. The insurer must provide a defense if the allegation give rise to a potential for coverage under the policy. If any doubt about whether a duty to defend arises, this doubt must be resolved for the insurer.

29. The letter of May 25, 2017 demanded that Hartford immediately pay and reimburse the defense costs that the Klementis have incurred to date and provide a defense going forward.

30. On June 22, 2017, Leverty & Associates received a letter from Mr. Alonso Smith dated June 14, 2017, but not received until June 22, 2017, that Hartford was in receipt of the May 25, 2017 letter but advised it was reviewing the information provided and would respond upon completion of its review.

31. Having received no further communication from Hartford on or after the letter dated June 14, 2017, but received June 22, 2017, Leverty & Associates sent a letter dated August 8, 2017 advising that Hartford once again violated the Nevada Insurance Trade Practices Act by failure to timely correspond. The letter advised Hartford that had violated NAC 686A.665 (3) multiple times.

1  32.  In the letter of August 8, 2017, Hartford was reminded on its duty to defend its insured was

2  broader than its duty to indemnify. In addition, Hartford was further reminded that its must provide

3  a defense if the allegation give rise to a potential for coverage under the policy. The closing

4  paragraph of August 8, 2017 provided:

> It is clear that Hartford in handling of the claim has a multiple occasions have failed to comply with the Unfair Trade Practices Act in that it has failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy. Again, I refer you to NRS 686A.310 as Hartford has once again failed to affirm or deny coverage of claim within a reasonable time.

9  33.  On or about August 16, 2017, Mr. Alonso Smith of Hartford wrote advising that Hartford

10 was in receipt of the August 8, 2017 letter. He further advised that Hartford was reviewing the

11 matter for potential coverage under the umbrella policy and that it would communicate its coverage

12 opinion when its review is completed.

13 34.  On or about September 15, 2017, Mr. Alonso Smith called the Klementi's counsel to advise

14 that Hartford had completed its coverage review under the insured's umbrella liability insurance

15 policy and would provide coverage under a reservation of rights letter. Mr. Smith confirmed the call

16 by his email sent at 3:26 p.m. on September 15, 2017.

17 35.  On or about September 20, 2017, Mr. Alonso Smith wrote an email advising there was a

18 change of counsel as Eric Larsen's office had a conflict with the case and therefore the case was

19 assigned by Hartford to The Marks Law Group.

20 36.  On or about September 22, 2017, the letter dated September 15, 2017 was received advising

21 that Hartford had completed its coverage review and concluded there is coverage triggered by the

22 Defamation, Invasion of Privacy and Malicious Prosecutions allegations. Hartford was therefore

23 providing a defense on all causes of action whether covered or not covered. Hartford advised that

24 it was assigning the law firm of Eric Larsen in Las Vegas, Nevada to provide a defense to the

25 Klementis. In the letter dated September 15, 2017, Hartford advised there would be required a

26 substitution of counsel and file transfer. The letter further provided to "please submit any post tender

27

28

1 legal billing incurred for the defense of the subject named insurers in this matter. Hartford will
2 review the billings for potential reimbursement of necessary and reasonable defense costs."

3   37.   On or about September 22, 2017, Mr. Pintar sent a letter dated September 19, 2017 advising
4 that he had received Hartford's September 15, 2017 letter in which it had reconsidered its position
5 and agreed to defend the Klementis in the third party action filed by Jeffery Spencer. Mr. Pintar
6 stated in the letter:

> In light of the Hartford's position, a conflict of interest exists between the Hartford and the Klementi's. In *Hanson v State Farm*, 131 Nev. Adv. Op. 131 (2015), the Nevada Supreme Court adopted the "Cumis rule" and found that when the interests of the insurance company and its insured conflict, Nevada law requires insurers to fulfill their contractual duty to defend their insureds by allowing their insureds to select their own independent counsel and paying for such representation. The Klementi's wish to continue being represented by my law firm in the case and for the Hartford to pay for that representation going forward.

38.   Mr. Pintar's letter dated September 19, 2017 requested that Hartford pay the total attorney fees and costs of $33,810.00 and enclosed an accounting of the fees and costs incurred by his firm charged to the Klementis.

39.   On or about October 16, 2017, a letter was sent by the Leverty Law Firm to Mr. Alonso Smith advising that Hartford decision to provide a defense was "too little and too late" and requested that it pay the law firm of Glogovac & Pintar $33,810.00 for defending the Klementis and pay the law firm of Leverty & Associates $8,666.30 for its services in obtaining coverage.

40.   The letter dated October 16, 2017 provided that: "from the moment The Hartford was notified in the complaint filed against Mr. and Mrs. Egon Klementi alleging defamation, invasion of privacy and malicious prosecution, it should have immediately searched for coverage under all policies issued to Mr. and Mrs. Klementi to find its duty to provide defense." The letter further provided that The Hartford: "cannot now simply provide a defense by a firm with an allegiance to The Hartford while providing its reservation of rights letter." In accord with Mr. Pintar's letter of September 19, 2017, The Hartford has clearly a conflict of interest between itself and its insured. The letter further stated: "Clearly, by the action of The Hartford a clear conflict exists and the law firm retained by Mr. and Mrs. Klemenit must be maintained."

7

41.     In the letter dated October 16, 2017, The Hartford was given ten (10) calendar days to pay attorney fees of $33,810.00 and $ 8,666.30 plus agree to allow Mr. Pintar to continue defending Mr. and Mrs. Klementi.

42.     On or after Mr. Pintar's letter of September 19, 2017, The Hartford never responded to this complaint in any manner to Mr. Pintar's letter nor did it contact in any manner its insureds.

43.     On or after the letter of October 16, 2017, The Hartford never responded to the date of this complaint in any manner to the letter nor did it contact its insureds in any manner.

44.     The Hartford has not paid either Glogovac & Pintar or Leverty & Associates.

45.     By the date of this Complaint, the Klementis have not been compensated in any amount for amounts paid and owed related to being defended in the Spencer lawsuit.

46.     Mr. and Mrs. Klementi have suffered damages over $10,000.

47.     Mr. and Mrs. Klementi have been forced to expend their own monies to initiate his action to recover amounts due and owing.

### III. FIRST CAUSE OF ACTION
*(Declaratory Relief - Hartford Underwriters*
*Insurance Company and Spencer.)*

48.     Plaintiffs hereby incorporate by this reference and realleges herein each and every allegation contained in all paragraphs on this complaint inclusive, as if fully set forth herein.

49.     An actual controversy has arisen, and now exists, between Plaintiffs, on the one hand and Defendant, on the other hand, concerning their respective rights and duties under the Policies.

50.     Plaintiffs contend they are entitled to a defense by and through Cumis counsel and that they are entitled to full payment of attorney fees and costs incurred in defending them in the Spencer lawsuit and seeking Hartford to provide a defense.

51.     Defendant has by its inaction and failure to respond to recognize its duty to pay attorney fees and costs or consent to Plaintiffs' right to Cumis counsel.

52.     Accordingly, Plaintiffs desire a judicial determination of their rights and duties under their policies, as well as the rights and duties of the parties under the Hartford policies, A prompt and speedy declaration of rights and duties of all parties is necessary and appropriate at this time in view

of the controversy presented between Plaintiffs and Defendant related to those rights and duties.

## III.  SECOND CAUSE OF ACTION
*(Breach of Contract - Hartford Underwriters Insurance Company.)*

53.   Plaintiffs hereby incorporates by this reference and realleges herein each and every allegation contained in all paragraphs on this complaint inclusive, as if fully set forth herein.

54.   Plaintiffs entered into an insurance contracts with Hartford.

55.   The insurance policy is a contract of adhesion and should be interpreted broadly, affording the greatest possible coverage to the insured.

56.   The contract must be given a construction which will fairly achieve its object of providing indemnity and providing for a defense for the loss to which the insurance relates.

57.   The terms of the insurance contract are to be understood in their plain, ordinary, and popular sense.

58.   Plaintiffs performed all conditions of the insurance policy required to be performed on their part.

59.   Hartford breached the contract by failing to provide benefits due and owing under the insurance policies issued to Plaintiffs.

60.   Hartford breached the insurance contract by, among other things, failing to adequately investigate to determine all coverages purchased by the Plaintiffs; by failing to provide Plaintiffs all of the benefits that they were entitled to under their Hartford policies; by failing to provide benefits due and owing under the insurance policies issued to Plaintiffs; by failing to promptly and fairly process and provide a defense to Plaintiffs; by failing to fairly evaluate Plaintiffs' claim; by placing its interests ahead of Plaintiffs; by repeatedly failing to provide Plaintiff's a defense.

61.   As a result of Defendant's actions, the Klementis are entitled to damages in excess of this Court's jurisdictional minimum.

## IV.  THIRD CAUSE OF ACTION
*(Breach of the Duty of Good Faith and Fair Dealing - Hartford Underwriters Insurance Company.)*

62.   Plaintiffs hereby incorporates by this reference and realleges herein each and every allegation

9

contained in all paragraphs on this complaint inclusive, as if fully set forth herein.

63. There is an implied covenant of good faith and fair dealing in the insurance contract that Defendants will not do anything to injure the rights of its insured to obtain benefits due and owing under the policy.

64. Plaintiffs have a legal entitlement to benefits, including but not limited to a defense due and owing under their insurance policy.

65. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by failing to comply with the minimum standards for the handling of claims and communicating with insureds as set forth by the Nevada Division of Insurance, as authorized by the Nevada Legislature pursuant to NRS 679B.130. The minimum standards specifically approved by the Nevada Legislature are set forth in NRS 686A.310(1). The rules identifying specific actions which, when violated by an insurer are violations of the minimum standards for an insurer operating in Nevada are set forth NAC 686A.660, NAC 686A.665, NAC 686A.670 and NAC 686A.675.

66. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by refusing, without proper basis, to recognize its coverage obligations. Specifically, as set forth in more detail above, Hartford improperly denied coverage to the Klementis.

67. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by failing to make a timely determination of coverage. Specifically, as set forth above in greater detail, Hartford repeatedly took far longer than the 30 days mandated by the Nevada Division of Insurance as the maximum time allowed under the law to respond to communications.

68. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by failing to properly investigate Plaintiff's claim. As stated above in greater detail, Hartford delayed investigating the Klementis' claim, denying the claim multiple times and intentionally dragging out the process and ignoring facts and information provided to Hartford regarding the claim and why coverage properly exists under the policy.

69. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct in failing to inform Plaintiffs of what was needed of them to do and to provide to

1 Defendants so that Defendants could promptly and timely adjust the claim and provide a defense.
2 As stated above, the Klementis repeatedly provided the information that they believed Hartford may
3 need to properly investigate the claim, but Hartford refused to communicate with the Klementis
4 beyond simply denying the claims.

5 70.   Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its
6 conduct by failing to provide Plaintiffs all of the benefits they are legally entitled to under The
7 Policy. Specifically, and as set forth more fully above, Hartford repeatedly denied coverage to the
8 Klementis, despite granting coverage in the same case on a substantially similar policy to Mr.
9 Klementis' brother, and ultimately granted coverage after many months (and dollars spent in
10 defending themselves out of their own pockets) without substantial changes in the complaint against
11 them.

12 71.   Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its
13 conduct in forcing Plaintiffs to institute this litigation to recover benefits they are legally entitled too
14 under The Policy. As set forth above, to date Hartford as failed to reimburse the Klementis for their
15 out of pocket expenses that they were forced to incur, both to Glogovac and Pintar, as well as to
16 Leverty & Associates.

17 72.   Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its
18 conduct in failing to conduct a full, fair, and prompt investigation of the claim. As set forth above
19 more fully, Hartford repeatedly denied the Klementis claim despite having knowledge of facts which
20 would allow for a defense to be granted. In so doing, Hartford showed that it was not conducting a
21 full or fair review of the claim. Hartford's repeated and unjustified delays showed that it was not
22 promptly investigating the claim.

23 73.   Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its
24 conduct in misrepresenting facts and policy provisions. More specifically and as addressed above,
25 Hartford denied contended that there was no coverage under the policy, despite having knowledge
26 of facts which would allow for a defense to be granted, and misrepresenting that no coverage existed
27 under the policies issued.

28

74.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by failing to adopt and implement reasonable standards for the prompt investigation of claims. Hartford's failure to adopt and implement reasonable standards for the prompt investigation of claims is shown by Hartford's repeated and unjustified delays in responding to the Klementis' claims and in Hartford's repeated and unjustified failures to respond to communications that asked for a response. Further, Hartford's failure to adopt and implement reasonable standards for the prompt and proper processing of claims is shown by Hartford's repeated and unjustified denials of claims.

75.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by ignoring evidence that supports coverage. As set forth more fully above, Hartford improperly and in an unjustified manner consistently interpreted the policy provisions narrowly, while its duty to defend requires, as a matter of law, for the policy provisions and the facts of the complaint to be interpreted broadly. Hartford has a duty to defend if any possible interpretation of the facts would allow for a defense to be presented, and Hartford ignored this evidence, despite multiple letters and communications showing how Hartford was misinterpreting these provisions.

76.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by unreasonably interpreting the policy. As set forth more fully above, Hartford unreasonably interpreted the policy by denying coverage when coverage or the potential of coverage clearly existed.

77.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by misrepresenting the law applicable to the policy and its claims handling. Specifically, Hartford turned the law applicable to the policy and its claims handling on its head, by

78.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct in failing to conduct a fair and objective evaluation of the claim. As set forth above, Hartford repeatedly failed to conduct a fair and objective evaluation of the Klementis' claim.

79.  Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by placing its interests ahead of Plaintiffs by ignoring clear issues that would provide

12

coverage to the Klementis that Hartford would have to pay for pursuant to the terms of the insurance policy.

80. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by failing to provide a reasonable explanation of the basis for denying and/or offering to settle or compromise their claim. As set forth above, at no time did Hartford provide a reasonable basis for the denial of coverage, despite being requested to do so on numerous occasions.

81. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by creating false or fictitious issues to avoid paying benefits due and owing.

82. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by using the claims department as a profit center, as shown by its repeated denials of coverage despite there being a clear basis for coverage to be provided.

83. Hartford acted in bad faith and breached the covenant of good faith and fair dealing by its conduct by other wrongful conduct which is currently unknown at this time, but which will be uncovered by through the litigation and discovery process.

84. As a proximate result of Defendants' breach of its duty of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be determined at trial.

85. As a result of Defendant's actions, the Klementis are entitled to damages in excess of this Court's jurisdictional minimum.

86. By engaging in its bad faith conduct, Defendants acted fraudulently, oppressively, and in malicious disregard of the rights of the Klementis. The Klementis, therefore, seeks punitive damages by way of punishment and deterrence in an amount to be determined at trial.

### V. FOURTH CAUSE OF ACTION
*(Breach of Nevada's Unfair Trade Practices - Hartford Underwriters Insurance Company.)*

87. Plaintiffs hereby incorporates by this reference and realleges herein each and every allegation contained in all paragraphs on this complaint inclusive, as if fully set forth herein.

88. Hartford is, and at all times mentioned herein was, an entity regulated by Title 57 of the Nevada Revised Statutes.

89. There was in force at all times relevant hereto a Nevada statute regarding the minimum standards of how to settle claims.

90. Plaintiffs' are specifically authorized to enforce the provisions of NRS 686A.310(1) in NRS 686A.310(2).

91. The Nevada Division of Insurance, pursuant to NRS 679B.130, was granted the authority to promulgate regulations setting forth rules as to the administration of insurance in the State of Nevada. These rules provide guidance for the interpretation of NRS 686A.310. As a result, Plaintiffs incorporate the specific provisions of NAC 686A.660, NAC 686A.665, NAC 686A.670 and NAC 686A.675 as the minimum standards by which insurers are mandated to act if they sell or provide insurance in the State of Nevada.

92. The specific provisions of the Nevada Administrative Code set forth the minimum standards acceptable for the action and transaction of insurance in the State of Nevada, as determined by the Nevada Division of Insurance, as authorized by the Legislature of the State of Nevada.

93. Hartford has violated NRS 686A.310 by carrying out unfair and deceptive trade practices in the business of insurance.

94. Hartford has violated NRS 686A.310 by misrepresenting pertinent facts and insurance policy provisions relating to coverages at issue;

95. Hartford has violated NRS 686A.310 by failing to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim, as set forth above.

96. Hartford has violated NRS 686A.310 by compelling Plaintiffs to institute litigation to recover coverages due under their insurance policies, as set forth above.

97. Hartford has violated NRS 686A.310 by compelling Plaintiffs to institute litigation to enforce the terms of the insurance policies, as set forth above.

98. Hartford has violated NRS 686A.310 by failing to provide a reasonable explanation of the basis for denying to provide Plaintiffs' a defense, as set forth above.

99. Hartford has violated NRS 686A.310 by failing to provide promptly to Plaintiffs' a reasonable explanation of the basis in the insurance policies, with respect to the facts of the insured's

1 claim and the applicable law, for the denial of Plaintiffs' claim for a defense, as set forth above.

2  100.    Hartford has violated NRS 686A.310 by failing to retain, train and supervise competent adjusters to conduct prompt, thorough and impartial investigations to promptly determine the true facts of this claim, as set forth above.

5  101.    Hartford has violated NRS 686A.310 by other wrongful conduct which is currently unknown at this time, but which will be uncovered by through the litigation and discovery process.

7  102.    As a result of Defendant's actions, the Klementis are entitled to damages in excess of this Court's jurisdictional minimum.

9  103.    As a proximate and foreseeable result of the violations of NRS 686A.310, the Klementis' have suffered damages in an amount to be determined at trial.

11  104.   In violating NRS 686A.310, Hartford acted fraudulently, oppressively, and in malicious disregard for the rights of Plaintiffs in breaching the provisions of said statutes and regulations. Plaintiffs, therefore, seeks punitive damages by way of punishment and deterrence in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment as follows:

1. For damages in excess of $10,000 and in such amounts as may be proved at trial;
2. For costs of suit, interest and reasonable attorney fees;
3. For special and consequential damages in an amount to be proved at trial;
4. For prejudgment and post judgment interest on all sums awarded, according to proof at the maximum legal rate if allowed by law;
5. For punitive damages in such amounts as may be proved at trial and if allowed by law; and,

////
////
////
////

15

6. For such and further relief as the Court deems just and appropriate.

DATED: This 18th day of July, 2018

                                **LEVERTY & ASSOCIATES LAW, CHTD.**

                                William R. Ginn, Esq.
                                832 Willow Street
                                Reno, NV 89502
                                Tel.: (775) 322-6636
                                *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I hereby certify under penalty of perjury that I am an employee of Leverty & Associates Law, Chtd., and that service of the foregoing was made on via the Court's CM/ECF system to:

> Darren T. Brenner, Esq.
> Scott R. Lachman, Esq.
> Akerman LLP
> 1635 Village Center Circle, Suite 200
> Las Vegas, NV 89134
> *Counsel for Defendant Hartford Underwriters Insurance Company*

DATED: This 18th day of July, 2018

                                An Employee of Leverty & Associates Law Chtd.